Entered: January 31st, 2017
Signed: January 31st, 2017

**SO ORDERED**

For the reasons set forth on the record at a hearing held on January 23, 2017.



**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Stuart Robert Hansen | * | |
| Mary Sue Hansen | * | |
| | * | |
| Debtors | * | Case No. 14-23744 |
| (Chapter 11) | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER CONFIRMING DEBTOR'S CHAPTER 11 PLAN OF
### REORGANIZATION

The Court having considered the Debtors' Plan of reorganization, Disclosure statement, and testimony and having noted that proper notice has been given without any objections filed, it is by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the Debtor's Chapter 11 Plan of Reorganization, incorporated by reference to this Order as Exhibit A, is CONFIRMED.

cc:
Office of the U.S. Trustee - Baltimore
Tate M. Russack, Debtors' Counsel
Daniel A. Staeven Debtors' Counsel
All Parties In Interest

**END OF ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| IN RE: | * | |
| **Stuart Robert Hansen** | * | **Case No. 14-23744** |
| **Mary Sue Hansen** | * | |
| **Debtors** | * | **Chapter 11** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEBTORS' CHAPTER 11 PLAN

Stuart Robert Hansen and Mary Sue Hansen, debtors and debtors-in-possession ("Debtors" or "Debtors in Possession"), by and through Daniel A. Staeven, Esquire, and Russack Associates, LLC, hereby proposes this Chapter 11 Plan of Liquidation ("Plan") pursuant to the provisions of Chapter 11 of Title 11 of the United States Code.

### ARTICLE 1
### Definitions

Unless otherwise defined herein, all terms used in this Plan and defined in the Bankruptcy Code shall have the meanings set forth in the Bankruptcy Code. All capitalized terms shall have the meanings set forth herein:

1.1.    <u>Administrative Claim</u>: A claim for costs and expenses incurred in connection with the administration of Debtors' Estate, including the formulation and implementation of this Plan, allowable in accordance with § 503(b) and entitled to priority under § 507(a)(1) of the Bankruptcy Code in the amount approved by the Bankruptcy Court.

1.2.    <u>Allowed Amount or Allowed Claim</u>:

1.2.1.    the amount of a Claim (as defined in § 101(5) of the Bankruptcy Code) that has been allowed in accordance with the Bankruptcy Code by a Final Order or by this Plan; or

1.2.2.    the amount of a Claim, proof of which has been timely filed with the Bankruptcy Court or that is listed in the Schedules D, E, or F (Statement of Liabilities of Debtors) filed by the Debtors with the Bankruptcy Court, as they may from time to time be amended or supplemented in accordance with Federal Rule of Bankruptcy Procedure 1009, as undisputed, non-contingent, and liquidated, as to which Claim:

1.2.2.1.    no objection to the allowance thereof has been filed within any period of limitation fixed by the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3003, Orders of the Bankruptcy Court or this Plan, or

1.2.2.2.    an objection to the allowance thereof has been filed, which objection has been denied, or the claim fixed as to amount, by a Final Order or judgment which has

1

become final by reason of the expiration of the period of appeal therefrom or from any decision on appeal without any further appeal having been taken, or

      1.2.2.3.   with respect to fees and expenses of Professional Persons, the amount of such fees and expenses allowed by Final Order of the Bankruptcy Court.

1.3.    <u>Allowed Interest</u>: Any "equity security" interest in debtors or any "equity security holder" as those terms are defined in Sections 101(16) and 101(17) of the Bankruptcy Code, exclusive of any such Interests held in treasury by the debtor, which Interests are identified in the List of Equity Security Holders filed by the debtors in connection with this bankruptcy case and as to which Interest no objection has been made or, which Interest has been allowed by a Final Order.

1.4.    <u>Allowed Priority Claim</u>: All Claims that are entitled to priority under Section 507 of the Bankruptcy Code, other than Administrative Claims.

1.5.    <u>Allowed Secured Claim</u>: Allowed Claim of a creditor secured by a "lien," as that term is defined in Section 101(37) of the Bankruptcy Code, against "property" of the Debtors' estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such creditor's interest in such estate's interest in such property, but excluding claims under Section 506(b).  In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a lien against any property of the debtor's estate to the extent that the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

1.6.    <u>Allowed Unsecured Claim</u>: Any Allowed Claim that is not an Administrative Claim, an Allowed Priority Claim or an Allowed Secured Claim.

1.7.    <u>Ballot</u>: The ballot for accepting or rejecting this Plan in form and substance as attached hereto as an exhibit.

1.8.    <u>Ballot Date</u>: The date set by the Bankruptcy Court for the receipt of ballots indicating acceptance or rejection of this Plan.

1.9.    <u>Bankruptcy Code</u>: Title 11 of the United States Code (U.S.C.) as enacted on April 20, 2005, by The Bankruptcy Abuse and Consumer Protection Act of 2005, S. 256, Pub. L. No. 109-8, 119 Stat. 23, effective on October 17, 2005, as applicable to this bankruptcy case, and any subsequent amendments thereto.

1.10.    <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the District of Maryland, Northern Division, 8th Floor, United States Courthouse, 101 West Lombard Street, Baltimore, Maryland 21201, having jurisdiction over the Debtor's Case.

1.11.    <u>Bankruptcy Rules</u>: The Federal Rules of Bankruptcy Procedure, as amended.

1.12.    <u>Bar Date</u>: The deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) as the bar date. The Bar Date shall be the date before which Claims must be filed (unless filing is excused under the Bankruptcy Code), failing which such Claims are disallowed for purposes of voting and distribution. By Amended Notice of Chapter 11 Bankruptcy Case filed July 22, 2015 (Docket No. 93), the Bar Date deadline for the timely filing of proofs of claim was set at November 3, 2015, for all creditors except a governmental units and March 2, 2016, for a governmental unit.

1.13.    <u>Business Day</u>: Any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.14.    <u>Case</u>: The Chapter 11 Bankruptcy case of Robert Stuart Hansen and Mary Sue Hansen, Case No. 14-23744, filed by way of voluntary petition on September 3, 2014 as a Chapter 7 Bankruptcy case and voluntarily converted to a Chapter 11 Bankruptcy case by order of this Court entered on June 29, 2015 (Docket No. 80).

1.15.    <u>Cash Assets</u>: All cash and cash equivalents, bank accounts, contracts, contract rights, general intangibles, deposits, refundable prepaid expenses, unearned premiums, and cash surrender value of insurance policies, lease deposits, proceeds derived from notes receivable, accounts receivable, post-petition wages and compensation, and causes of action of the Debtors and Debtors-in-Possession.

1.16.    <u>Claim(s)</u>: Any and all present and future claim(s) against Debtors as defined in §101(5) of the Bankruptcy Code, including, but not limited to, priority and general claims, and any and all claims arising from the rejection of executory contracts and unexpired leases of Debtors.

1.17.    <u>Collateral</u>: Property in the possession of Debtors as of the Filing Date, and the proceeds thereof as provided by 11 U.S.C. § 552, in which one or more Creditors hold consensual or non-consensual interests securing indebtedness owed to them by Debtors. Creditors shall not have a security interest in property acquired after the Filing Date unless they have been granted such by court order during the pendency of this Case.

1.18.    <u>Confirmation</u>: Entry by the Court of an Order confirming this Plan in accordance with the provisions of the Bankruptcy Code, which Order in fact becomes a Final Order fourteen (14) days from entry thereof.

1.19.    <u>Confirmation Date</u>: The date on which the Confirmation Order described in paragraph 1.20 below is entered in the Case.

1.20.    <u>Confirmation Order</u>: The Order described in paragraph 1.18 above entered by the Court to confirm this Plan or any modification thereof, pursuant to 11 U.S.C. § 1129.

1.21.    <u>Court</u>: The United States Bankruptcy Court for the District of Maryland, which shall retain jurisdiction over Debtors and their property as set forth in this Plan.

1.22.    <u>Creditor</u>: The holder of a Claim.

3

1.23.    <u>Debtors</u>: Stuart Robert Hansen and Mary Sue Hansen, as identified on the Voluntary Petition filed to commence this case.

1.24.    <u>Disclosure Statement</u>: The document filed, or to be filed, in connection with the Debtors' Case pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court as containing "adequate information" as that term is defined in Section 1125(a)(1) of the Bankruptcy Code, as it may be amended from time to time by any duly authorized amendment or modification.

1.25.    <u>Disputed Claim</u>: Any Claim for which an Allowed Claim has not been determined.

1.26.    <u>Distribution Dates</u>: The first Distribution Date shall be no earlier than the 90th day following the Effective Date of this Plan, as defined in paragraph 1.27 below, and every 90th day thereafter, until Distributions under this Plan are fully completed.

1.27.    <u>Effective Date</u>: The thirtieth (30th) day after Confirmation, unless implementation of the Plan is stayed pending appeal, in which case the first day after the appeal is finally resolved in favor of confirmation of this Plan or the stay is otherwise dissolved (but no earlier than the thirtieth (30th ) day after Confirmation).

1.28.    <u>Estate</u>: The estate of Debtors created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Case.

1.29.    <u>Filing Date</u>:  September 3, 2014, the date upon which the Debtors filed their Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code commencing the Case.

1.30.    <u>Final Order</u>: An Order of Court or of an appellate court from which all rights of appeal have been exhausted unsuccessfully, or regarding which the time for appeal has expired with no appeal having been perfected.

1.31.    <u>Impaired Class of Claims or Interests</u>: Any Class of Claims or Interests treated under this Plan in a manner as described in Section 1124 of the Bankruptcy Code.

1.32.    <u>Insider</u>: Any person or entity that is an "insider" as is defined in Section 101(31)(A) of the Bankruptcy Code.

1.33.    <u>Monthly Report</u>: A financial report summarizing the Debtors' revenue and disbursements on a calendar month basis.

1.34.    <u>Net Revenue</u>: The income received by the Debtors from only the Debtors' net business income, the Debtors' social security income, and any withdrawals taken by the Debtors from their retirement funds, totaled, and then less: (i) all necessary or appropriate monthly household expenses incurred during the pendency of this Plan by the Debtors; (ii) all taxes, including but not limited to income taxes, withholding taxes, or capital gains taxes, due as a result of the receipt of income or the incurring of an expense or the disposition in any form of any Estate asset including any Cash Assets.

4

1.35.    <u>Order of Confirmation</u>: Final Order issued and entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.36.    <u>Person</u>:  An individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.37.    <u>Plan</u>: This Plan of Liquidation in its present form or as it may hereafter be amended or modified.

1.38.    <u>Plan Agent(s)</u>: The person designated by this Plan to take all actions empowered or required by the Plan. In this case, the Plan Agents are the Debtors-in-Possession.

1.39.    <u>Priority Claim</u>: An Unsecured Claim (including a Tax Claim and an Administrative Claim) entitled to priority of payment under § 507 of the Bankruptcy Code.

1.40.    <u>Professional Person</u>: An individual or organization employed pursuant to Final Order of the Bankruptcy Court as required by Section 327(a) of the Bankruptcy Code.

1. 41.    <u>Rejection Claim</u>: A claim arising under Section 502(g) of the Bankruptcy Code and any Claim of a holder of an executory contract as defined in the Bankruptcy Code which pursuant to a Final Order of the Court is Allowed as a Claim under Section 502(g) of the Bankruptcy Code.

1.42.    <u>Secured Claim</u>: A Claim of a person or entity which is secured by a lien, security interest, or encumbrance which is either consensual or arises by operation of law or Order of Court and which is properly perfected under applicable law, to the extent of the value of such entity's interest in Debtor's interest in the Collateral.

1.43.    <u>Secured Creditor</u>: The holder of a Secured Claim.

1.44.    <u>Tax Claim</u>: A Priority Claim by taxing authorities entitled to payment in accordance with Section 507(a)(8) of the Bankruptcy Code.

1.45.    <u>Trustee</u>: The Debtors in Possession in this Case pursuant to Section 1107 of the Bankruptcy Code.

1.46.    <u>Unsecured Claim</u>: A claim against the Debtors excluding Priority Claims, Tax Claims, and Secured Claims, the holder of which Unsecured Claim is an "Unsecured Creditor" but including any claim for deficiency balance that might remain following a Secured Creditor's enforcement of its lien and realization upon its Collateral provided that such Secured Creditor timely filed a proof of claim prior to the Bar Date and an amended proof of claim for such deficiency was filed within sixty (60) days from the date of the Final Order approving the Debtors' Disclosure Statement.

1.47.    <u>Unsecured Creditor</u>: The holder of an Unsecured Claim whose Allowed Claim shall be paid from the Unsecured Creditors Distribution Fund.

5

1.48.    <u>Unsecured Creditor Distribution Fund</u>: The Debtors' post-petition debtor-in- possession bank account upon the Effective Date of the Plan shall constitute the Unsecured Creditors Distribution Fund from which Allowed Claims shall receive a distribution on Distribution Dates.

## ARTICLE II
### Classification of Claims and Interests

The creditors are divided into the following Classes:

2.1.    <u>Class 1 – Allowed Priority Claims (Non-Tax)</u>: Class 1 consists of all Allowed Claims against the Debtors that are entitled to priority under § 507 of the Bankruptcy Code *other than* 11 U.S.C. § 507(a)(1) administrative claims and § 507(a)(8) unsecured tax claims. These claims consist of an estimated $6,500.00 in US Trustee fees and approximately $66,304.77 in administrative expenses.

2.2.    <u>Class 2 – Pay in the Normal Course</u>: This Class consists of the following claims filed in the case:

1. Claim 1 BMW Financial Car lease in the amount of $16,008.96 (as of filing)
2. Claim 17 JP Morgan Chase in the amount of $14,656.42 (as of filing)
3. Claim 18 Ally Financial in the amount of $11,698.40 (as of filing)

2.3.    <u>Class 3 – 9019 Court Approved Compromise with Customers Bank</u>: This Class consists of non-dischargeable portion of the debt owed to Customers Bank in the amount of $350,00.00, as approved by the court under the separately filed Motion pursuant to Rule 9019.

2.4.    <u>Class 4 – General Unsecured Consumer Claims</u>: This Class consists of the Allowed Unsecured Claims of the following creditors, pursuant to the POC filed in the Claims Register of this Case, and described as:

a) A.S. Turner and Sons in the amount of $5,870.00, (See, Claim 2-1 of the Claims Register);

b)   Bank of America, N.A. in the amount of $12,358.00, (See, Claim 3-1 of the Claims Register);

c)   Capital One Bank (USA), N.A. in the amount of $17,067.00, (See, Claim 4-1 of the    Claims Register);

d)   Comenity Bank in the amount of $1,453.00, (See, Claim 5-1 of the Claims Register);

e)   American Express Bank, FSB in the amount of $1,603.00, (See, Claim 7-1 of the Claims Register);

f)   American Express Bank, FSB in the amount of $438.00, (See, Claim 8-1 of the Claims Register);

g)    Capital One, N.A. in the amount of $3,785.00, (See, Claim 10-1 of the Claims Register);
h)    Customers Bank in the amount of $4,169.00, (See, Claim 14-1 of the Claims Register);
i)    American Express Bank, FSB in the amount of $1,942.00, (See, Claim 16-1 of the Claims Register);
j)    Wells Fargo Bank, N.A. in the amount of $124.00, (See, Claim 20-1 of the Claims Register);    and,
k)    Wells Fargo Bank, N.A. in the amount of $125.00, (See, Claim 21-1 of the Claims Register).

2.5.    Class 5 – <u>General Unsecured Debts Converted from Secured Debts</u>: This Class consists of the following unsecured debt remaining after the pre-plan distribution of funds from the sale of estate assets, Specifically the sale of the Debtor's vessel and former primary residence:

Claim 12 Customers remaining balance after sale of assets $71,080.04
Claim 13 Customers remaining balance after sale of assets $751,273.37
Claim 19 Wells Fargo remaining balance after sale of assets $111,793.05

## ARTICLE III
## Treatment of Claims and Interests

3.1.    <u>Class 1 – Allowed Priority Claims (Non_Tax)</u>: Such claims will be paid in full under the Plan on the Effective Date of the Plan or upon such terms as the holder of such claim and the Debtors may agree. These claims may consist of an estimated $6,500.00 in trustee expenses, and $66,304.77 in administrative expenses, which will be paid through liquidation of assets.

*This class is unimpaired by the Plan and therefore this class may NOT vote on the plan.*

3.2.    <u>Class 2 – Pay in the Normal Course</u>: In complete satisfaction and discharge Debtors will pay 100% of these claims in the normal course under the plan.

*This class IS NOT impaired by the Plan, and therefore this class may NOT vote on the plan.*

3.3    <u>Class 3 – 9019 Court approved Compromise with Customers Bank</u>:    Under the settlement with Customers Bank the Debtor will pay to Customers on a monthly basis $1500.00 toward the non-dischargeable debt of $350,000.00, which represents only approximately 25-30% of the total Customers Bank Debt.    This $350,000.00 shall reduce the total debt owed to Customers bank and the remainder of that debt shall be considered a Class 5 Debt under this plan.    In complete satisfaction the Debtors will pay 100% of this claim in the normal course under the plan and thereafter until paid under the terms of the court ordered settlement.

7

*This class IS impaired by the Plan, and therefore this class may vote on the plan.*

3.4.    <u>Class 4 – General Unsecured Consumer Debts</u>: The General unsecured consumer creditors will be paid .25 cents on the dollar through payments from the Debtors' discretionary income.   In complete satisfaction and discharge, Debtors will pay .25 cents on the dollar of these claims through quarterly payments under the plan.

*This class IS impaired by the Plan, and therefore this class may vote on the plan.*

3.5.    <u>Class 5 – General Unsecured Debts as Converted from Secured Debts</u>:    These claims will not be paid in the plan and will be included in the discharge at the completion of the plan.

*This class IS impaired by the plan, and therefore this class may vote on the plan.*

## ARTICLE IV
### Impairment of Claims and Interests

4.1.    The following Classes of creditors under this Plan are not impaired by the proposal set forth in this Plan: 1, and 2.

4.2.    The following Classes of creditors under this Plan are impaired by the proposals set forth in this Plan: 3, 4, and 5.

4.3.    The U.S. Trustee Fees and the Allowed Administrative Claims in Class 1 Claims for services as costs and expenses of administration are not impaired and shall be paid in full.

4.4.    The Class 2 Allowed Secured Claims shall retain their respective liens and security interests and shall be paid in the order of their pre-petition priority and are treated as provided in 11 U.S.C. § 1129(a)(7)(A)(ii).

4.6.    The Allowed Unsecured Claims in Class 3, 4 and 5 are impaired by the inability of the Debtors to pay the full value of these claims and by the extension of the period over which the Debtors propose to make its distribution, however, the Plan proposes that the creditors holding Allowed Claims in Class 3 and 4 shall receive not less than that which would be distributed on account of their Allowed Claims were the Debtors to be liquidated under Chapter 7 as required by the provisions of 11 U.S.C. § 1129(a)(7)(A)(ii).

## ARTICLE V
### Implementation and Execution of the Plan

5.1    <u>Funding of the Plan</u>: The funds necessary for the implementation of the Plan of

Liquidation and the satisfaction of the Claims of Creditors shall be generated from the sale of the Debtors' non-exempt assets.   Since all of the non-exempt assets of the Debtors will be sold, or abandoned due   to inconsequential values and/or burdensome to the Estate, the funds available for distribution will be the cash proceeds from the net proceeds from the sale of the Debtors personalty, together with Net Revenues. Net Revenues will be used, in addition to liquidation proceeds, to pay only Claims in Classes 3 and 4.   No Net Revenues are anticipated to be available to be used to pay any claims in Class 5.

   5.1.1    Authorization to Liquidate Remaining Personal Property

   By this Plan the Debtor is seeking authorization to sell all of its remaining non-exempt personal property.   The Debtor has engaged an auctioneer earlier in the case, Alex Cooper Auctions and intends to use the auctioneers services where necessary and or to sell directly through other means, Direct Yard Sale, Classified Advertising, Ebay, or other on-line venues, the Debtor's personal property.     The Debtor is authorized under this plan to make the necessary judgment decision to find the best venue for the liquidation of the estates property so as to achieve the highest and best value for the property sold.

   5.1.2    Upon confirmation of this plan the Debtor can commence the sale of this property without further court permission.

5.2    Alternatives to the Plan: The only alternative to distribution pursuant to this Plan is conversion from Chapter 11 to Chapter 7. In the event the case were to be converted, there would be additional fees, costs, and expenses for the employment of a Chapter 7 trustee and counsel for the trustee, which would further reduce the availability of the Fund for distribution. The Debtors estimate that the total compensation that would have been due to a Chapter 7 Trustee in this case where there was total liquidation would have exceeded $120,000.00, which is more than double the expected total administrative claims of the Debtors' professional administrative claims as of the Effective Date.

5.3    Disputed Claims: Notwithstanding any other provision of this Plan of Liquidation, disputed claims or un-liquidated claims shall be paid after the allowance of such claims by the Bankruptcy Court.

5.4.    Disbursements: Distributions to holders of Allowed Claims shall be made at the addresses set forth in the Schedules or in the Proofs of Claim filed by Creditors. If any Creditor's Distribution is returned as undeliverable, no further Distributions to such Creditor shall be made unless and until the Debtors are notified of such Creditor's current address, at which time all missed Distributions shall be made to such Creditor without interest. All claims for undeliverable Distributions shall be made within thirty (30) days from the date on which such Distribution was initially made and all unclaimed property and funds, and any and all interest thereon, shall become the exclusive property of the Reorganized Debtors.

5.5.    Disbursing agent: On the Effective Date, or as soon as practicable thereafter, the Debtors-in-Possession, or their retained Plan Agent shall act as Disbursing Agent under the Plan and shall make distribution according to the terms of the Plan.

5.6.    <u>Avoidance Claims</u>: After the Effective Date, the Debtors in their sole discretion shall decide whether to pursue any preference, fraudulent conveyance, or other avoidance claim or any other cause of action and shall be authorized in their discretion to commence and/or continue any action under 11 U.S.C. §§ 544, 545, 547, 548, 549, 550, 551, and 553 and any other cause of action, right to payment, or claim that may have belonged to the Debtors or to the Estate. The Debtors reserve for themselves and for their Estate the right to commence and/or continue or to terminate any and all such causes of action. Confirmation of this or any amended Plan shall constitute the avoidance of any judicial lien against the Debtors' assets.

5.7.    <u>Incomplete Ballot</u>: Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate acceptance or rejection of the Plan shall be deemed to have accepted the Plan. Any Ballot not filed in accordance with the filing instructions on the Bankruptcy Court's notice or on the Ballot pertaining to this Plan shall not be counted for voting purposes.

5.8.    <u>Provision for Rejecting Classes</u>: With respect to any Class of Creditors which is affected by and does not accept the Plan by the majority required by Chapter 11 of the Bankruptcy Code, adequate protection for the realization by them of the value of their debts against the property dealt with by the Plan and affected by such debts shall be provided in the Order Confirming the Plan by any of the methods prescribed in the Bankruptcy Code.

5.9.    <u>Retention and Title to Assets</u>: Title to any and all of the Debtors' assets, whether or not dealt with in the Plan, shall revert to the Debtors free and clear of all liens, encumbrances, and Claims except as otherwise set forth in the Plan. Upon the entry of an Order of Confirmation, the Debtors shall remain in possession of their assets, to the extent not surrendered or sold, and shall do so free and clear of all liens, security interests, and encumbrances, subject only to outstanding liens, if any, which are not avoided by the Debtors or by this Plan.

5.10.    <u>Effect of Court Orders</u>:

   5.10.1. Post-petition Financing Orders. All Final Orders authorizing Debtors to incur debt shall survive the Confirmation of the Plan, and the terms and provisions of said Final Orders and all documents executed pursuant to the authority granted by such Final Orders shall continue in full force and effect post-Confirmation.

   5.10.2. Cash Collateral Orders. All Secured Claims and Administrative Claims arising from the existence, operation, and effect of any Final Order authorizing Debtors to use cash collateral shall be Allowed Claims, and any Creditor holding such Allowed Claims shall file, with the Court, a Proof of Claim with respect thereof on or before the Effective Date. Nevertheless, the terms of all such Final Orders shall cease to be effective and shall be null and void in all respects upon the Effective Date of this Plan and the Debtors shall have the unfettered right to use all Cash Assets, Collateral, and Net Revenue in any manner the Debtors deems proper or advisable subject only to the performance of their obligations under this Plan and as may be required by the Confirmation Order.

5.10.3.  Post-petition Valuation Orders. All Final Orders valuing collateral, a Secured Claim, and authorizing Debtors to make payment on a restructured Secured debt shall survive the Confirmation of the Plan, and the terms and provisions of said Final Orders and all documents executed pursuant to the authority granted by such Final Orders shall continue in full force and effect post-Confirmation.

5.11.  <u>Time Bar to Payments</u>: Payments and Distributions pursuant to the Plan shall be made by check drawn on a domestic bank. Checks issued pursuant to the Plan in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days from the date of issuance thereof as will appear on the face of such check. Requests for re-issuance of any check shall be made directly to the Debtors by the Creditor of the Allowed Claim with respect to which such check was originally issued. Any claim with respect to such a voided check shall be made on or before ninety-one (91) days from the date of the issuance of such check as appears on the face of such check. After the expiration of ninety-two (92) days from the date of the issuance of such check as appears on the face of such check, all claims in respect to such void checks shall be forever barred, and the all unclaimed property, distributions, and funds, and any and all interest thereon, shall become the property of the Debtors.

5.12.  <u>Request for Cramdown Under § 1129(b) of the Bankruptcy Code</u>: The Plan shall be deemed a request for cramdown under § 1129(b) of the Bankruptcy Code if any Class entitled to vote does not accept the Plan by the requisite majorities required by § 1126 of the Bankruptcy Code.

## ARTICLE VI
## Executory Contracts and Unexpired Leases

6.1.  <u>Assumption of Leases</u>: The Debtors reserve the right to apply to the Bankruptcy Court prior to the Confirmation Date to expressly assume or reject any and all contracts which are executory, pursuant to Section 365 of the Bankruptcy Code. Any and all executory contracts or unexpired leases of the Debtors not expressly assumed prior to the Confirmation Date shall be deemed to be rejected.

## ARTICLE VII
## Amendments and/or Modifications

7.1.  The Debtors may modify this Plan at any time before on or after the Confirmation Date, but may not modify the Plan so that the Plan as modified fails to meet the requirements of 11 U.S.C. §§ 1122 and 1123 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 1127(a), after the Debtors file a pre-confirmation modification with the Bankruptcy Court, the Plan as modified becomes the Plan

7.2.  The Debtors may modify this Plan at any time after the Confirmation Date and before substantial consummation of this Plan, but may not modify the Plan so that the Plan as modified fails to meet the requirements of 11 U.S.C. §§ 1122 and 1123. Pursuant to 11 U.S.C. § 1127(b), the Plan as modified under this subsection becomes the Plan only if the Bankruptcy Court, after

notice and an opportunity for a hearing confirms such Plan, as modified, under 11 U.S.C. § 1129 of the Bankruptcy Code and circumstances warrant such modification.

7.3.     Before or after the Confirmation Date, or in the Confirmation Order, the Debtors may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan, in such manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE VIII
## Disputed Claims

8.1.     General Matters and Time for Filing: All Disputed Claims shall be resolved in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and shall only be entitled to receive a Distribution according to Classes as provided in the Plan, as of the date and to the extent each such Claim is Allowed by entry of a consent order or a Final Order.

8.2.     Filing of Objections by Debtors: All objections by Debtors to Claims or Ballots shall be filed within ninety (90) days following the Effective Date or be forever barred, unless the objection relates to a claim filed after the Effective Date in which case the objection may be filed within ninety (90) days of the filing of such Claim provided that the Debtors shall have been provided with a copy of such post-Effective Date Claim. In the event that Debtors shall not have been provided with a copy of such post-Effective Date Claim, the Debtors shall have ninety (90) days from the date of discovery of such post-Effective Date Claim by the Debtors within which to file such objection and such objection shall aver that the Debtors had no such knowledge of the post-Effective Date claim prior to ninety (90)
days prior to the filing of such objection.

8.3.     Filing of Objections by Parties in Interest: Any party other than the Debtors objecting to Claims that existed or arose on or before the Filing Date, or that are listed as undisputed, non-contingent and liquidated in the Debtor's Schedule D, E, or F, must file such objection within thirty (30) days from the Confirmation Date and shall serve a copy of such objection upon the Debtors and its undersigned counsel.

8.4.     Standing: The Debtors or any other person having standing under the Bankruptcy Code may file objections to claims, on any proper basis, including improper amount, improper classification hereunder, lack of consideration, or otherwise, including but not limited to the status of any agreement, contract, pledge, or other instrument or document as void, voidable, or in any other manner invalid.

8.5.     Funds: The Debtors or their Plan Agent shall hold sums otherwise distributable upon Disputed Claims in an Escrow Account pending a resolution of such dispute. Interest earned on the account shall be given to the party entitled to the principal. Escrow Funds which are determined not to be distributable to the holder of a Disputed Claim shall be distributed on the next applicable Distribution Date among the other members of the same Class as the holder of such Disputed Claim, unless all such other members of the same Class shall have received their

full entitlement under this Plan, in which case the funds shall be transferred to the Unsecured Creditor Distribution Fund account, unless all Unsecured Claims shall have received their full entitlement under this Plan, in which case, Escrow Funds shall become the sole property of the Debtors.

8.6.    Claims from Executory Agreements:    All Claims arising from the rejection of executory contracts or unexpired leases under this Plan shall be filed within twenty (20) days after the Confirmation Date. All such claims, unless specifically admitted by the Debtors, shall be treated as Disputed Claims.Any such claims not filed within the time frame specified herein and required by this Section are discharged and shall forever be barred as Claims against the Debtors.

8.7.    Setoffs: Except as otherwise provided in the Plan, the Debtors may setoff against any Claim, claims of any nature that the Estate or Debtors may have against a Creditor, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim or setoff that the Estate or the Debtors may have against such Creditor. However, this provision shall not be applicable to the Internal Revenue Service whose rights of setoff and recoupment shall be preserved.

## ARTICLE IX
## Effect of Confirmation

9.1.    Persons Bound:    Upon the entry of the Confirmation Order, the provisions of this Plan shall bind Debtors, any entity acquiring property under the Plan, Creditors and holders of all claims of any nature against the Debtors, whether or not the claim of such Creditor or of such holder is impaired under the Plan and whether or not such Creditor or holder of such claim has accepted the Plan.

9.2.    Discharge: As provided by the Bankruptcy Code in 11 U.S.C. § 1141(d)(5)(A), the completion of plan payments under this Plan after the entry by the Court of a Confirmation Order shall discharge of Debtors and all persons liable with the Debtors from all debts, obligations, and liabilities, contractual or otherwise, which shall be null and void, and the Debtors shall only be bound to perform the obligations imposed by this Plan. As provided by the Bankruptcy Code in 11 U.S.C. § 1141(d)(5)(B), the Debtors may seek a discharge if the payments under this Plan are not completed, but only if modification of this Plan is not practicable, the Class 5 Claims have actually received at least what such claims would have received under a Chapter 7 liquidation of the Debtors, and the Debtors had not then committed violations described in 11 U.S.C. § 522(q)(1).

9.3.    Lien Avoidance: The entry of the Confirmation Order shall not prohibit the Debtors from the filing of any action for the avoidance of any judicial lien against the Debtors assets whether owned individually by either of the Debtors or jointly by the Debtors with each other or with another person or entity.

9.4.    Waiver: The Confirmation Order shall waive and discharge for all Creditors, other than the holders of fully Secured Claims all interest, late charges, penalties, attorneys' fees, expenses,

court costs, and any other charges of any kind, whether accrued or assessed, which are not expressly set forth in this Plan to be paid. This provision shall not apply to any Allowed Claims held by the Internal Revenue Service or the State of Maryland, or any other political or governmental subdivision, interest, if any, on which Allowed Claims shall be paid as provided for in the preceding paragraphs, and which asserted penalties, if any, shall be paid as general unsecured claims as provided above. All attorney's fees which are a component of any Claim shall be subject to review and determination by the Bankruptcy Court based on a reasonableness standard and shall only become a portion of an Allowed Claim to the extent authorized by a Final Order of the Bankruptcy Court.

9.5.    Property Transactions: The Confirmation Order shall entitle the Debtors to sell, convey, or encumber any asset and any property in any manner without further Order of the Court, so long as doing so does not impair the Debtors obligations under this Plan

9.6.    Revesting of Assets: The Confirmation Order shall revest the Debtors with all of their assets subject only to outstanding liens not avoided by the Debtors under the Plan or the Bankruptcy Code.

9.7.    Financial Affairs: The Confirmation Order shall entitle the Debtors to manage their financial affairs without further Order of the Court.

9.8.    Injunction Imposed: The Confirmation Order shall enjoin any action against the Debtors and all persons liable with the Debtors and shall constitute the imposition of a permanent injunction in favor of the Debtors and all persons liable with the Debtors precluding the commencement or continuation of any action or the issuance of any process to the fullest extent permitted and contemplated by 11 U.S.C. §§ 105, 362, and 524 with respect to any debt, obligation, Claim, or guaranty arising prior to the Petition Date and any debt, obligation, Claim, or guaranty classified in any Class in this Plan, except the claim for professional compensation in Class 2.

9.9.    Limitations of Liability: Debtors, their attorney, their agents, and other professionals whose employment was approved by the Bankruptcy Court during the Case shall neither have nor incur any liability to any entity for any act taken or omitted to be taken prior to the Confirmation Date in connection with or related to the Case, including but not limited to: (i) any act taken or omitted to be taken in connection with, related to or leading to the filing of the Chapter 11 Case; (ii) any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, or Confirmation of the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with, the Plan, the Disclosure Statement or the Confirmation Order; or (iii) any act taken or omitted to be taken in connection with any
estimation, projection, evaluation or investigation undertaken or prepared in connection with the formulation of the Plan, the Disclosure Statement or the Confirmation Order; provided, however, that the foregoing provisions shall have no effect on the liability of any person that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

9.10.    <u>Modification and Subrogation of Claim</u>: The Confirmation Order shall not prejudice the right of the Debtors to negotiate with any Creditor for the payment of any claim, debt, or obligation on terms different than herein provided in the sole discretion of the Debtors. The receipt by any Creditor of any sum on its Allowed Claim from any non-Debtor third party shall reduce dollar-for-dollar the obligation of the Debtors under this Plan, without any modification of the Debtors to perform any obligation under this Plan, it being the right of such non-Debtor third party payor to be subrogated to the Claim and Distribution to which such Creditor may have been entitled to the extent of the payment made by such payor to such Creditor for the benefit of the Debtor.

**ARTICLE X**
**Reorganized Debtor**

10.1.    The Reorganized Debtors shall be responsible for:

10.1.1. Keeping complete and accurate books and records;

10.1.2. Operating Reorganized Debtor and its business, if any;

10.1.3. Employing professionals, if necessary;

10.1.4. Reviewing all Proofs of Claim and amended Proofs of Claim filed in this case and objecting to such if warranted;

10.1.5. Pursuing preference or fraudulent conveyance claims, if any, as they determine in their sole discretion to be in the best interests of creditors and the Reorganized Debtors;

10.1.6. Making all distributions to Creditors under this Plan in accordance with the amounts of the Allowed Claims and to the extent provided for in this Plan;

10.1.7. Determining whether to sell by private sale or public auction any asset, or to otherwise dispose of same in their sole discretion;

10.1.8. Taking any and all actions that are necessary to effectuate the provisions of the Plan;

10.1.9. Determining whether uncollected accounts receivable and/or unsold assets should be abandoned;

10.1.10. Performing the execution, delivery and/or recordation to the extent necessary as attorney-in-fact in the event a claim or interest holder fails to do so as required by the Plan;

10.1.11. Managing their affairs; maintaining possession of their assets, to the extent not surrendered pursuant to this Plan, subject only to outstanding liens, if any, which are not avoided by the Debtors or this Plan; selling, transferring, or otherwise disposing of their

assets; borrowing funds, or conducting any manner of its business without further Order of the Bankruptcy Court; and,

10.1.12. Taking any necessary actions in an attempt to have the Case closed as soon as practicable.

10.1.12.1    Following six (6) months after entry of a Confirmation Order, and at any time after Cash Distributions have commenced under the Plan after the Effective Date, the Debtors may file a Motion To Recognize Substantial Consummation of the Plan and seek entry of an Order of Full Administration, following substantial consummation of the Plan as defined under 11 U.S.C. § 1101(2) combined with a Request for Final Decree.

10.1.12.2    However, there will be no Final Decree entered in this case until all Cash Distributions to all Allowed Claims have occurred and until all Administrative Expense Claims, including United States Trustee fees, have been paid

10.1.12.3    Although the Chapter 11 Case will be closed following the filing of the above referenced Motion to Recognize Substantial Consummation of the Plan (should the Debtors elect to file such a Motion), the Plan will continue to be performed and prosecuted by the Debtors as though the Chapter 11 Case were open up to and including the point where the Debtors have completed all Cash Distributions under the Plan, which is contemplated to be 60 months from the Effective Date (although some Allowed Claims within the Plan are contemplated to be treated over a short period and some Allowed Claims [Class 3] will be treated over a longer period post-discharge);

## ARTICLE XI
### Execution and Delivery of Necessary Documents or Instruments

11.1.    Power of Attorney: The holders of all claims against the Debtors or claims against or interests in property of the Debtors' Estate shall execute and deliver all instruments and documents as are necessary to implement this Plan including those required to release liens and security interests in Collateral. In the event that the holder of such a Claim or interest fails or refuses to execute, deliver, and/or record such instrument or document as required by this Plan, then the Debtors, or any other person entitled to act on behalf of the Debtors and/or Reorganized Debtor shall, automatically upon Confirmation, be constituted as the attorney-in-fact to perform such execution, delivery, and/or recordation as fully as could such holder. This power shall survive disability, incompetence, and death of the either Debtor and shall survive the Confirmation of the Plan.

## ARTICLE XII
### Jurisdiction

12.1.    Until the Court enters an Order closing the case, the Court shall retain jurisdiction to:

16

12.1.1. Classify the Claim of any Creditor and to re-examine Claims which have been allowed for purposes of voting and to determine objections to the Claims of Creditors. The failure by the Debtors to object to, or to examine, any Claim for the purposes of voting shall not be deemed a waiver of the Debtors' right to object to, or to re-examine, the Claim in whole or in part;

12.1.2. Determine all questions and disputes regarding title to assets of the Estate, to determine all causes of action, questions, controversies, disputes, conflicts, and litigation, whether or not subject to an action pending as of the Confirmation Date or that may arise subsequently thereto, between the Debtor and any other party or between third parties, including but not limited to any right of the Debtors to recover money or other property pursuant of the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure or that may substantially affect the Debtors' ability to carry out this Plan;

12.1.3. Correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of this Plan;

12.1.4. Modify the Plan after Confirmation pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure subject to Article 10, above;

12.1.5. Determine the reasonableness of, allow, and direct the disbursement of compensation for professional fees, costs, and expenses for approved professional services, including those incurred for post-confirmation services upon application filed by the Reorganized Debtors with the Court to the extent that the Reorganized Debtors may dispute the reasonableness off any such charges;

12.1.6. Enforce and interpret the terms and conditions of this Plan, including but not limited to any agreement for the satisfaction of an Allowed Claim or the entry of a Judgment or Lien for the enforcement of an Order;

12.1.7. Enter any order, including injunctions, as may be necessary or appropriate to enforce the title, rights, and powers of the Debtor and to impose such limitation, restriction, terms and conditions on such title, rights, and powers as the Court may deem necessary or appropriate to carry out the provisions of this Plan;

12.1.8. Perform any acts related to any other matters as may be set forth in the Confirmation Order;

12.1.9. Administer any adversary proceeding for the pursuit and recovery of any alleged preferential transfer, fraudulent conveyance, account receivable, claim, demand, or cause of action, or the recovery of any asset of the Estate, which the Debtors or their counsel shall be explicitly permitted and empowered to institute by virtue of the authority granted by this section; and

12.1.10. Enter an Order concluding, terminating, and closing this case.

12.2.     Except as provided in this Article, the Court's jurisdiction shall terminate as to this Case, and this Case shall be terminated and closed on the earlier of (i) six (6) months from the Effective Date of the Plan, (ii) the final disposition of all matters, if any, pending on that date, or (iii) the day after the final payment is made to the Creditors of all the classes whose Claims are treated under this Plan, subject to being reopened upon application of a party in interest to consider a matter within the scope of § 12.1. of the Plan and all subsections.

**ARTICLE XIII**
**Miscellaneous Provisions**

13.1.     <u>Executory Contracts</u>: The Debtors reserve the right to apply to the Court prior to the Confirmation Date to assume or reject any and all contracts or agreements which are executory pursuant to 11 U.S.C. § 365 of the Bankruptcy Code.

13.1.1. Except as provided for in § 6.1. above, the Confirmation of the Plan shall automatically constitute a rejection of all executory contracts, agreements, pledges, unexpired leases, and obligations which have (i) not been rejected prior to that date, (ii) not assumed, in whole or in part, by prior Order of the Court, (iii) for which an application has not been filed seeking an assumption thereof, or (iv) assumed under this Plan. If the rejection of an executory contract, agreement, pledge, unexpired lease, or obligation by the Debtors results in damage to the other party or parties to such instrument, a Rejection Claim for such damage, if not heretofore evidenced by a timely filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors and/or the Reorganized Debtors unless filed in accordance with this Plan.

13.1.2. Post-Filing Date leases and promissory notes are not affected by this provision.

13.2.     <u>Calendar Matters</u>: Whenever any payment to be made or any report to be provided under this Plan is due on a day other than a business day, such payment shall be made or report shall be dispatched on the next business day.

13.3.     <u>Administrative Claims</u>: All applications for allowance of administrative expenses pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code shall be filed and served on the Debtors within ninety (90) days from the date of the Confirmation Order, unless the provisions of 11 U.S.C. § 331 of the Bankruptcy Code mandate a longer or different period.

13.4.     <u>Tender of Payment</u>: The tender of payment to the holder of a Claim in any Class treated under this Plan shall be deemed to effect a release and discharge by such holder on behalf of itself, its successors, assignors, heirs, executors, and personal representatives, of all other persons and their property who may be liable for or subject to such claims, including guarantors.

13.6.     <u>Service of Documents on Debtors</u>: Any pleading, notice or other document required by the Plan or Confirmation Order to be served or delivered to Debtors shall be sent by first class U.S. mail, postage prepaid, to:

Daniel Steaven, Esquire
Russack Associates, LLC.
100 Severn Avenue, Suite 101
Annapolis, MD 21403

and

Daniel A. Staeven, Esquire
100 Severn Ave.
Suite 101
Annapolis, MD 2403

## ARTICLE XIV
### Default

14.1.    Events and Conditions of Default: Debtors shall be in Default under the terms of this Plan upon the occurrence of any of the following events or conditions:

14.1.1. Debtors fail to make timely any disbursement to Creditors within fifteen (15) days from the date on which it is due;

14.1.2. Debtors make an assignment for benefit of creditors;

14.1.3. Any petition or application for any relief (other than the Case) under the Bankruptcy Code now or hereafter in effect or a case under any insolvency, reorganization, receivership, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction now or hereafter in effect is filed by or against Debtors, provided, that Debtors shall have ninety (90) days from the date of filing of an  involuntary petition to cure that default by obtaining dismissal of any such petition;

14.2.    If a party in interest holding an Allowed Claim fails to receive payment as provided under the Plan, or if any party in interest questions the Debtors' compliance with the Plan in any way, such party shall give the Debtors written notice thereof, and the Debtors may cure such nonpayment or noncompliance, if any, within twenty (20) days from their receipt of such notice.

## ARTICLE XV
### Acceptances of the Plan

15.1.    Ballots (the attached exhibit) shall be sent to counsel for the Debtors:

Daniel A. Staeven, Esquire
Russack Associates, LLC
100 Severn Ave., Suite 101
Annapolis, MD 21401

19

Dated:    October 15, 2016          By: /s/Stuart Robert Hansen
                                    Stuart Robert Hansen, Debtor
Dated:    October 15, 2016          By: /s/Mary Sue Hansen
                                    Mary Sue Hansen, Debtor

Respectfully submitted by:

**_/s/Daniel A. Staeven_____**
Daniel A. Staeven, #27662
Russack Associates, LLC
100 Severn Ave., Suite 101
Annapolis, MD 21403
Office    (410) 505-4150
Fax       (410) 510-1390
tate@russack.net

*Counsel for Debtors in Possession*

20